UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUIS ANTONIO FALCON TENELEMA,

                Petitioner,          1:25-CV-0902-MAV

   v.

                                        DECISION & ORDER

JOSEPH E. FREDEN, *et al.*,

                Respondents.
_____

      Petitioner Luis Antonio Falcon Tenelema ("Petitioner") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on September 20, 2025 after he was arrested and detained by federal immigration officials. ECF No. 1. On the afternoon of November 26, 2025, Petitioner filed an amended petition (ECF No. 12), an emergency motion for a temporary restraining order to enjoin Petitioner's removal (ECF No. 13), and a motion to expedite consideration of the TRO (ECF No. 14). Because the Court was closed on both November 27, 2025 and November 28, 2025 for the Thanksgiving holiday, the Court held a conference on the matter and heard argument on Monday, December 1, 2025. ECF No. 15. For the reasons discussed below, Petitioner's motion for a TRO is denied.

## BACKGROUND

      According to the amended petition, Petitioner is a 31-year-old citizen of Ecuador, who entered the United States through Mexico without inspection in May 2014. ECF No. 12, ¶¶ 18–19. Petitioner was apprehended by U.S. Customs and Border Patrol soon thereafter, but was released on his own recognizance. *Id.* ¶ 19. He then moved to Massachusetts, where he lived with his wife, two children, and other family members for approximately 11 years. *Id.*

¶¶ 18–19. At some point during that period, an Immigration Judge issued an order of removal against Petitioner *in absentia*. *Id.* ¶ 22.

In March 2024, Petitioner filed an application for T Nonimmigrant Status, otherwise known as a "T visa." *Id.* ¶ 20. The basis for Petitioner's T visa application "was that [he] was recruited, harbored, and coerced for the purpose of involuntary servitude and was physically present in the United States on account of his trafficking." *Id.* It does not appear that Petitioner's T visa application triggered any notifications or alerts as to the order of removal that had been issued against him, and he remained unaware of the order.

In September 2025, Petitioner was detained by federal agents in Lowell, Massachusetts, and ultimately transferred to the Buffalo Federal Detention Facility. He remains in ICE custody. On September 20, Petitioner filed a petition for habeas corpus under 28 U.S.C. § 2241. ECF No. 1. On September 25, Respondents notified the Court of the final order of removal that had previously been issued against Petitioner *in absentia*, and informed the Court that Petitioner was in the process of seeking a reopening of his removal proceedings, as provided by 8 U.S.C. § 1229a(b)(5) and 8 C.F.R. § 1003.23(b)(4). ECF No. 4. Accordingly, the Court held proceedings in this action in abeyance pending the outcome of Petitioner's motion to reopen his removal proceedings. ECF No. 6.

On the morning of November 24, 2025, counsel for Respondents notified the Court that Petitioner's motion to reopen had been denied on November 20, 2025, and that U.S. Immigrations and Customs Enforcement ("ICE") had informed him it was "ready, willing, and able to carry out removal [of Petitioner] in the immediate future." ECF No. 7. Respondents provided a copy of the Immigration Judge's decision on the motion to reopen. *Id.*

Thereafter, Petitioner filed an amended petition (ECF No. 12), and the motions for a TRO (ECF No. 13) and expedited consideration (ECF No. 14) presently before the Court.

## LEGAL STANDARD

In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and TROs. *Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). "'[A] preliminary injunction is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

A party seeking a TRO and / or a preliminary injunction must show "(1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). If the federal government is the opposing party, then factors (3) and (4) merge. *New York v. Trump*, 765 F. Supp. 3d 287, 291 (S.D.N.Y. 2025) (citing, *inter alia*, *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Additionally, "[w]here a party seeking a temporary restraining order fails to establish a likelihood of success on the merits, there is no need to address the other prongs of the analysis." *Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023) (internal citation and quotation marks omitted).

## DISCUSSION

Petitioner's amended petition alleges four claims for relief: (1) violation of Petitioner's

Fourth Amendment rights to be free of unreasonable searches and seizures; (2) a violation of Petitioner's Fifth Amendment right to due process; (3) a violation of the Administrative Procedure Act's ("APA") prohibition of agency action that is arbitrary and capricious (5 U.S.C. § 706(2)(A)); and (4) a violation of 8 U.S.C. § 1231 and its implementing regulations. ECF No. 12 ¶¶ 27–55. His motion for a TRO focuses on the latter three claims. ECF No. 13-1.

## I. The Court's Jurisdiction

At the outset, the Court addresses Respondents' argument that the Court has been stripped of jurisdiction in this matter by 8 U.S.C. § 1252(g). ECF No. 17.

Section 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). As Respondents point out, at least one court in this district has found that § 1252(g) strips the district court of authority to consider a temporary restraining order where, as here, an alien has been ordered removed but still has a visa application pending. *See* ECF No. 17 (referencing *K.K. v. Garland*, No. 23-CV-6281-FPG, 2025 WL 274431, at *2 (W.D.N.Y. Jan. 23, 2025), *appeal dismissed as moot sub nom. K.K. v. Bondi*, No. 25-190, 2025 WL 1233307 (2d Cir. Apr. 8, 2025) ("Section 1252(g)'s jurisdictional bar applies here.").

In the interim between the decision cited by Respondents and the present, the Second Circuit issued its decision in *Ozturk v. Hyde*, in which it pointed out:

> As both the Supreme Court and our Court have explained, § 1252(g)'s bar on jurisdiction is "narrow[ ]." *Reno v. Am.-Arab Anti-Discrimination Comm.* ("AADC"), 525 U.S. 471, 482 (1999); *see also Fulton v. Noem*, No. 25-194, at 2 (2d Cir. Apr. 30, 2025) (order granting stay of removal pending appeal and

> rejecting the proposition that § 1252(g) bars review of challenges to the manner of removal). Section 1252(g) is directed "against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. This bar on judicial review is thus cabined "to three discrete actions": a decision "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 482 (quoting 8 U.S.C. § 1252(g)) (emphases adopted). There are "many other decisions or actions that may be part of the deportation process" but that do not fall within the three discrete exercises of "prosecutorial discretion" covered by § 1252(g). *Id.* at 482, 489.

*Ozturk v. Hyde*, 136 F.4th 382, 396–97 (2d Cir. 2025).

Thus, other "'courts in this [circuit] have held that § 1252(g) does not strip courts of jurisdiction when the petitioner is seeking to challenge ICE's legal authority over a removal order, rather than its discretionary decisions regarding removal orders.'" *R.O.A. v. Edlow*, No. 2:25-CV-723, 2025 WL 3210930, at *5 (D. Vt. Sept. 30, 2025) (quoting *S.N.C. v. Sessions*, No. 18 Civ. 7680, 2018 WL 6175902, at *5 (S.D.N.Y. Nov. 26, 2018) (collecting cases)). *But see Villatoro v. Noem*, No. 25-CV-05306 (OEM), 2025 WL 2880140, at *2 (E.D.N.Y. Oct. 9, 2025) (finding that § 1252(g) barred the Court from staying the effectuation of the petitioner's removal even though his T visa application was still pending).

In the instant case, Petitioner is not challenging the removal order itself, or ICE's discretion to select *when* or *how* to execute the removal order. Rather, Petitioner presents the purely legal question as to whether ICE has the authority to execute the removal order at all while his T visa application is pending. *See, e.g., R.O.A.*, 2025 WL 3210930 at *6 ("Because Petitioner challenges whether ICE has the authority to remove him during the pendency of his applications, not ICE's discretionary choice to remove him [at a particular time and place], § 1252(g) does not strip the court of jurisdiction to hear Petitioner's claim.").

Accordingly, the Court is inclined to respectfully disagree with the decision cited by Respondents and find that 8 U.S.C. § 1252(g) does not strip the Court of its jurisdiction to

consider the instant motion. *See, e.g., Garcia v. Noem et al.,* No. 3:25-CV-06008-DGE, 2025 WL 3237502, at *3 (W.D. Wash. Nov. 20, 2025) (finding the petitioner's claims regarding her T visa application presented "purely legal questions that do not challenge [the government]'s discretionary authority, even though the answer to the legal questions may form the backdrop against which the [government] may later exercise discretionary authority.").

## II. Likelihood of Success on the Merits

Nevertheless, the Court declines to grant Petitioner's TRO because he has not demonstrated a likelihood of success on the merits of his Fourth or Fifth Amendment claims, his claim under the APA, or his claim under 8 U.S.C. § 1231.

### A. Fourth Amendment Claim

In his amended petition, Petitioner argues that Respondents arrested him in violation of his right to be free from unreasonable searches and seizures in that they "lacked reliable information of changed or exigent circumstances that would justify his arrest after federal immigration authorities had already decided he could pursue his claims for immigration relief at liberty when they released him from custody in 2014 . . . ." ECF No. 12 ¶ 28–30.

Petitioner did not address this claim in his motion for a temporary restraining order, and the Court finds Petitioner's allegations in the amended petition to be too conclusory to carry his burden of persuasion on this motion by a "clear showing." *Sussman*, 488 F.3d at 140. Among other things, Petitioner has provided virtually no detail regarding the actual circumstances of his arrest other than the date and location, and he has not explained why the authority under 8 U.S.C. § 1357(a) of properly authorized immigration officials to arrest aliens without a warrant under appropriate circumstances is not applicable.

Consequently, Petitioner has not demonstrated he is likely to succeed on his Fourth Amendment claim.

**B. Fifth Amendment Claim**

Petitioner "does not challenge the order of removal that was entered against him or [ICE]'s authority to remove him. Instead, he challenges the processes ICE has employed . . . while he has a pending application for a T Visa . . . ." ECF No. 13-1 at 1. He also argues that because he has a pending application for a T visa, and a T visa is not available to an individual who is not physically present in the United States, Respondents' "actions to deport Petitioner would deprive him of relief to which he is legally entitled and frustrate Congress's scheme to protect individuals from trafficking . . . ." ECF No. 13-1 at 5. He further argues that "[a]ny act that would impede an individual's ability to avail themselves of forms of relief for which they may be eligible may violate due process." *Id.* at 6.

*i. The Legal Framework of a T Visa*

Article I, Section 8, Clause 4 of the Constitution gives Congress the power "[t]o establish an uniform Rule of Naturalization." Thus, the Supreme Court has repeatedly held that Congress has "plenary power" over the admission and exclusion of aliens. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020); *Arizona v. United States*, 567 U.S. 387, 396 (2012); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972); *Boutilier v. Immigration and Naturalization Service*, 387 U.S. 118, 123 (1967). In the matter of issuing visas, Congress has specified a number of different classes of nonimmigrants eligible for at least temporary admission, but it delegated broad discretion to the Executive Branch to implement the programs: 8 U.S.C. § 1184(a)(1) provides that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as

the Attorney General[1] may by regulations prescribe . . . ."

In the instant action, Petitioner has applied for a T visa. The "T visa" takes its name from 8 U.S.C. § 1101(a)(15)(T), a provision which creates a class of nonimmigrants eligible for a visa based on the fact that they are or have been a victim of a severe form of human trafficking, and which was added to the immigration statutes through the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"). 8 U.S.C. § 1101(a)(15)(T)(i)(I); *see also* VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT OF 2000, PL 106–386, 114 Stat 1464, 1477–80 (October 28, 2000). To qualify for a T visa, the petitioner must have been a "victim of a severe form of trafficking in persons" and must be "physically present in the United States[,]" among other requirements. 8 U.S.C. § 1101(a)(15)(T).

Despite the creation of the T visa program, "Congress did not bar enforcement of a removal order upon the filing of a T visa application. Nor did it mandate that the T visa application of a person with a final removal order be adjudicated before a removal order is enforced." *Garcia*, 2025 WL 3237502 at *6. Additionally, the regulations governing T visa applications explicitly state that the filing of a T visa application does not impede the execution of a final order of removal, and provides an avenue – 8 C.F.R. § 241.6(a) – for seeking to stay removal. *See* 8 C.F.R. 214.204(b)(2)(i) ("[t]he filing of an Application for T Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal, although the applicant may request an administrative stay of removal pursuant to 8 CFR 241.6(a).").

---

[1] The Homeland Security Act of 2002 abolished the Immigration and Naturalization Service ("INS"), which was administered by the Attorney General, and delegated many of the Attorney General's duties to the Department of Homeland Security ("DHS"). For instance, 6 U.S.C. § 251 provided that all functions performed under the Border Patrol and removal programs would be transferred from INS to DHS.

*ii. Petitioner's Due Process Claim*

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Here, Petitioner has not demonstrated that he is likely to succeed on his claim that he was denied due process. Petitioner entered the United States without inspection in 2014, nearly fourteen years after passage of the VTVPA and the creation of the T visa program; yet he did not file his application for a T visa until 2024, ten years after his entry into the country. ECF No. 12. Unlike the petitioner in *Portillo Vasquez v. Turek*, No. 2:25-CV-741, 2025 WL 2733631 (D. Vt. Sept. 25, 2025), a case which Petitioner cites in support of his TRO motion, Petitioner makes no allegations in either the amended petition or his memorandum of law that he was unable to complete any steps for the T visa application process due to actions by immigration officials. *See Portillo Vasquez*, 2025 WL 2733631 at *2 ("When Petitioner arrived at her biometrics appointment to be fingerprinted [as a required step in her T visa application, ICE] agents arrested and detained her."). Rather, he asserts the right to have his completed T visa application adjudicated prior to his removal, at least to the extent of receiving a bona fide determination under 8 C.F.R. § 214.205.

Nevertheless, when Petitioner was provided the opportunity at the December 1 conference to identify specific statutes, regulations, or changes in policy that would support his assertion of the right to a bona fide determination on his application prior to removal, authorize or warrant a court-ordered stay of removal in this action, explain how the Immigration Court's consideration of his motion to reopen did not present a sufficient opportunity to be heard, or clarify why the application for an administrative stay under 8 C.F.R. § 241.6 was not a sufficient avenue to seek a stay of removal, Petitioner's arguments were unpersuasive. In fact, as noted above, the regulations specifically contemplate the situation of T visa applicants with final orders of removal, and provides that the filing of a T visa application has no effect on the government's authority to execute a final order of removal. 8 C.F.R. § 214.204(b)(2)(i). Further, Petitioner admitted that the application for an administrative stay under 8 C.F.R. § 241.6 was an option that he could pursue.

Under such circumstances, the Court finds that Petitioner has failed to demonstrate a likelihood of success on his claim that his Fifth Amendment due process rights were violated.

### C. 5 U.S.C. § 706(2) (the APA)

Petitioner argues that his claim under the APA is likely to succeed because "Respondents detain the Petitioner outside of their statutory authority," and because the facts show that he was "seized while availing himself of the T-Visa process created under the law and without any individualized evaluation of his case," which qualifies as "arbitrary and capricious under the APA." ECF No. 13-1 at 6.

The APA provides, in pertinent part, that a court reviewing the legitimacy of agency action shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .

." 5 U.S.C. § 706(2)(A). Further, the Second Circuit has explained that "[a]n agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Kakar v. United States Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022) (citing *Alzokari v. Pompeo*, 973 F.3d 65, 70 (2d Cir. 2020)).

At this point in the proceedings of the present action, Plaintiff has failed to demonstrate any of the indicia of an arbitrary and capricious agency action identified by the Second Circuit. He has not shown that ICE or other immigration officials have relied on factors which Congress has not intended it to consider, because – as discussed above – Petitioner is not challenging the validity of his removal order, and Congress did not bar enforcement of a removal order upon the filing of a T visa application. *See supra* at 9 (citing *Garcia*, 2025 WL 3237502 at *6; 8 C.F.R. § 214.204(b)(2)(i)). He has not shown that the agency entirely failed to consider an important aspect of the problem because, though Petitioner argues that he cannot be removed while his T visa application remains pending, the Immigration Judge's decision denying Plaintiff's motion to reopen his removal proceedings acknowledges that the application is pending, and indicates that Petitioner declined to share with the Immigration Judge the substance of his application so that the Immigration Judge could make a preliminary assessment of its merits and – potentially – order the reopening of removal proceedings. ECF No. 7. And he has simply not shown that the agency offered an explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of agency expertise.

In short, Petitioner has not shown that his detention is improper or illegal, or that he is entitled under relevant law and regulations to have his T visa application adjudicated by the agency prior to his removal. Thus, he has not shown that the agency's conduct in his case has been "arbitrary and capricious," and the Court finds that Petitioner has failed to demonstrate he is likely to succeed on his APA claim.[2]

### D. 8 U.S.C. § 1231

Lastly, Petitioner argues that he is likely to succeed on his petition because the Respondents are detaining Petitioner beyond the removal period. ECF No. 13-1 at 6–7. That is, he notes that 8 U.S.C. § 1231(a)(1)–(2) mandates detention only during the "removal period," which runs 90 days from the date that an alien is ordered removed, and that he was ordered removed over 11 years ago. ECF No. 13-1 at 6. However, "[a]n alien ordered removed who is inadmissible under section 1182 of this title, . . . may be detained beyond the removal period . . . ." 8 U.S.C. § 1231. Here, Petitioner concedes that he entered the United States without inspection in 2014. (Doc. 1 at 4.) Thus, Petitioner's detention beyond the 90-day removal period does not violate Section 1231(a) because he is inadmissible under Section 1182. *See Portillo Vasquez*, 2025 WL 2733631 at *4. Moreover, the Supreme Court has stated that an alien who has been determined to be removable "may be held in confinement [under 8 U.S.C. § 1231] until it has been determined that there is no significant likelihood of removal

---

[2] The Court recognizes that Petitioner's T visa application, filed in March 2024, has been pending for more than a year and a half at the time of this decision. ECF No. 12 ¶ 20. However, Petitioner has not argued that he is entitled under the APA to have the Court "compel agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. 706(1).

in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Here, ICE has informed Respondents that it is able to remove Petitioner in the immediate future.

## CONCLUSION

Although the Court finds it has jurisdiction to hear Plaintiff's motion for a TRO, the Court concludes that Plaintiff has not demonstrated a likelihood of success on his claims sufficient to warrant granting the motion. Accordingly, although Petitioner's motion to expedite a hearing of his TRO motion [ECF No. 14] is GRANTED, Petitioner's motion for a TRO is DENIED [ECF No. 13].

The Court recognizes the denial of Plaintiff's motion for TRO may effectively moot the Plaintiff's amended petition depending on the action taken by ICE in the near future. Nevertheless, the parties are directed to confer and inform the Court of their thoughts on how this matter should proceed. The parties shall file a status report no later than December 15, 2025 or take any other action they believe reasonable and appropriate prior to such date.

SO ORDERED.

Dated:   December 8, 2025
         Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge